IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERTO RIVERA-NIEVES (1),<br><br>Defendant. | CRIMINAL NO. 16-512 (PAD) |

**MEMORANDUM AND ORDER**

Delgado-Hernández, District Judge.

Before the court is defendant's request to revoke the U.S. Magistrate Judge's order denying pretrial release (Docket No. 151). For the reasons explained below, the motion is DENIED. Defendant shall remain detained without bail pending trial.

**I.   BACKGROUND**

On August 17, 2016, defendant was charged with conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; and possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(Docket No. 22). On August 18, 2016, U.S. Magistrate Judge Marcos E. López ordered defendant detained pending trial, finding there is a serious risk that the defendant will endanger the safety of another person or the community if released (Docket No. 66 at p. 2).

On May 23, 2017, defendant filed a "Motion for De Novo Review of Detention Order and for Evidentiary Hearing Pursuant to 18 U.S.C. Sec. 3145(B)" (Docket No. 151). On May 25, 2017, the court scheduled a *de novo* hearing for June 5, 2017 (Docket No. 153). The hearing was held as scheduled (Docket No. 160). The parties proceeded via proffer. Based on the information

received during the hearing, the court ordered that defendant remain under custody pending further record review. Id. Having reviewed the record in its entirety and listened to the recording of the detention hearing held before the Magistrate Judge, the court is persuaded that defendant should be detained without bail pending trial.[1]

## II.   STANDARD OF REVIEW

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156, permits detention of a defendant pending trial if no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person and the community. 18 U.S.C. §§ 3142(b) and (e). The government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).

Where probable cause is found to believe that a defendant has committed a crime listed or in the circumstances set forth in 18 U.S.C. § 3142(e), a rebuttable presumption arises that no conditions or combination of conditions exist that will reasonably assure the appearance of the defendant and the safety of the community. A grand jury indictment on a covered offense is enough to demonstrate probable cause for purposes of triggering the presumption. United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986); United States v. Holland, 922 F.Supp.2d 70, 71 (D.D.C. 2013).

Once triggered, the presumption imposes on the defendant a burden of production. United States v. O'Brien, 895 F.2d 810, 814-815 (1st Cir. 1990). The burden is not heavy. United States v. Stone, 608 F.3d 939, 946 (6th Cir. 2010). It is satisfied introducing at least some evidence

---

[1] With limited exceptions and contrary to the U.S. District Judges, Magistrate Judges do not have a Court Reporter present during the numerous proceedings held before them. Therefore, unless a transcript is requested following the applicable rules and regulations, no transcript is prepared or available for those proceedings. The content of the hearing, however, is always recorded using a Digital Court Recording "DCR" program. District Judges have immediate access to DCR audio files, and may listen to the audio files when reviewing a determination made by a Magistrate Judge.

contrary to the facts presumed. Id. Rebuttal evidence does not burst or destroy the presumption, which does not disappear, maintaining evidentiary weight. United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); O'Brien, 895 F.2d at 814-815.

The government retains the burden of persuasion throughout, in both presumption and non-presumption cases. Stone, 608 F.3d at 946; Bess, 678 F.Supp.929 at 932; United States v. Bess, 678 F.Supp. 929, 932 (D.D.C. 1988). To determine if it has met that burden, the court must consider: (1) the presumption (if applicable); (2) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of Section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (3) the weight of the evidence; (4) the history and characteristics of the defendant; and (5) the danger posed to the community by defendant's release. 18 U.S.C. § 3142(g); United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). Review of a magistrate judge's release order is *de novo*. United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990). The court must state in writing the reasons for the action taken. United States v. Moss, 887 F.2d 333, 338 (1st Cir. 1989); O' Brien, 895 F.2d at 813.

### III.  DISC USSION

**A. Presumption**

The presumption applies in this case. Offenses triggering the presumption include those carrying a maximum term of imprisonment of 10 years or more under the Controlled Substances Act, 21 U.S.C. § 801 et seq.; the Controlled Substances Import and Export Act, 21 U.S.C. § 951 et seq.; and the Marine Drug Law Enforcement Act, 46 U.S.C. App. 1901 et seq. See, Section 3142(f)(1)(C). Defendant has been charged with violating 18 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 by conspiring to possess with intent to distribute cocaine and engaging in the corresponding

United States v. Roberto Rivera-Nieves
Criminal No. 16-512 (PAD)
Memorandum and Order
Page 4

substantive offense, and faces a penalty of imprisonment of not less than 10 years and up to life (Transcript of *De Novo* Hearing at p. 19).[2]

Defendant claims that: the case against him is not legally strong (Docket No. 151 at pp. 2, 9); there are no statements incriminating him (Transcript, p. 27); and there is no evidence that he is violent or has endangered the community before. Id. Likewise, he points out that he does not have prior convictions or a history of possessing firearms, and was not charged in the firearms counts in this case. Id. at p. 11. And he contends he has strong family ties to this district. Id. at p.12. The court will assume that the presumption has been rebutted and by extension, that it retains evidentiary weight to be evaluated along with the criteria set forth in 18 U.S.C. § 3142(g), discussed below.

   B.  Detention Factors

      1.  Nature and Circumstances of Offenses

Defendant was arrested walking wet at night in an area in Inches Beach in Patillas, Puerto Rico, where police officers found 34 wet bales containing cocaine (Transcript at pp. 19-20). The amount of cocaine seized is substantial, with a net weight of 670 kilograms worth millions of dollars. Id. at p. 20. Earlier that night, an officer had reported a suspicious small vessel driving fast in the coast off the beach (Docket No. 1-1 at p. 2). Officers drove around the area until they entered Hacienda Corsica, a guest house that fronts Inches Beach. Id.

---

[2] District Judges have Court Reporters as part of their staff when presiding over the different proceedings held before them. Among other responsibilities listed in 28 U.S.C. § 753, reporters are responsible for promptly transcribing, when requested, the original record of all proceedings held before the judge and prepare and file a certified transcript of the same. The transcript is available, following applicable rules and regulations, to parties who have arranged payment. And it is also available at the request of a judge, at no charge to the court. District Judges have access to the rough drafts of the transcripts before a formal request is made by any interested party, or the transcript is filed for the record in the court.

United States v. Roberto Rivera-Nieves
Criminal No. 16-512 (PAD)
Memorandum and Order
Page 5

As the officers entered the premises, they noticed three vehicles. Id. Getting closer to one of the vehicles, several men knocked on the vehicle window of the officers, demanding to know who they were. Id. When they replied they were the police, the men screamed "police" and began to run away, shooting at the officers while they fled. Id. at pp. 2-3. The officers defended themselves by shooting back at the men that were attacking them, following them by foot. Id. at p. 3. As the officers were returning to the location where their vehicle was parked, the defendant came out of the area where the bales were later found. Id.

The officers started walking back to a safer area with the defendant when another vehicle came into Hacienda Corsica. Id. Two individuals came out of the vehicle while one individual stayed inside it. Id. They started shooting at the officers after the officers identified themselves as police. Id. Later, while looking around the area for the individuals, officers found the bales containing what they suspected was cocaine. Id. at p. 4. The bales were wet. Id. In the meantime, officers detected the vessel that had been reported earlier, 200 to 400 feet from the shore, in the direction of lights seen in the beach. Id. at p. 6. As one of the officers approached it, the vessel took off quickly at a high rate speed. Id. The officer was able to stop the vessel between Maunabo and Patillas. Five individuals, including defendant, were detained at various points that night. All in all, the offenses charged, the statutory sentencing exposure, and their underlying circumstances favor detention.[3]

2. Weight of Evidence

The evidence against defendant is circumstantial, but the weight is not light. Defendant came out of the area where the bales were found. He was wet, as the bales were wet. He appeared after a shootout, in a sequence of events that started with reports of a suspicious vessel driving fast

---

[3] For present purposes, the court is entitled to rely on maximum statutory terms of imprisonment. Moss, 887 F.2d at 336.

off the beach coast. There is no evidence that he was a guest in Hacienda Corsica or was about the check into the place. According to the government, the evidence will corroborate that defendant was communicating with other people for the objective of receiving the cocaine. Id. at p. 24. After the arrest, defendant stated that he was from Moca; was there to visit Moca; and was in Patillas (two and a half hours away from Moca), smoking weed with two friends he only knew as Alex and Juan (Transcript at pp. 21-22).[4] But that is grind for the jury.[5] For purposes of bail determination, there is no evidence inconsistent with a finding of guilt. See, United States v. Gray, 529 F.Supp.2d 177, 181 (D.Mass. 2007)(so noting in rejecting claim that weight of evidence was weak).[6] The weight of evidence favors detention.

    3.   History and Characteristics of the Defendant

Defendant is thirty years of age (Pretrial Services Report at p. 1). He completed the 11th grade. Id. at p. 3. He is bilingual (English and Spanish). Id. From birth to 1996, he resided in New Jersey. Id. at p. 2. From 1996 to 2003 he resided in Moca, Puerto Rico. Id. From 2003 to 2006, he resided in North Carolina. Id. From 2006 to 2014 he resided in Moca. Id. Since 2015 until his arrest he resided with his consensual partner in Pennsylvania. Id. He does not have a U.S. passport. Id. He has two siblings: one in Moca and one in New Jersey. Id. at p. 1. Even though he is no stranger to travel between Puerto Rico and the United States, his consensual partner recently moved from Pennsylvania to Puerto Rico, and his parents live in Puerto Rico. So there may be conditions of release that could neutralize the risk of flight. At the same time, defendant

---

[4] Defendant could not provide information on those two friends (Transcript at p. 22).

[5] He could have been smoking weed before or after offloading bales. No marijuana was found in his possession or in the area where the bales were located.

[6] Compare that situation with the one evaluated in United States v. Torres-Rosario, 600 F.Supp.2d 327, 334 (D.P.R. 2009), where the only witness against the defendant failed to identify him in court during the bail hearing even though he was the only person in the courtroom dressed in an inmate jumpsuit and was sitting at the defense counsel table next to his attorneys.

faces up to life imprisonment, which provides a motive to flee. See, United States v. Valentín-Cintrón, 656 F.Supp.2d 292, 296 (D.P.R. 2009)(identifying potential ten-year sentence in risk-of-flight analysis). And he was a daily marijuana user, which accentuates flight risk. Id. In the end, these elements neutralize aspects of the personal history and characteristics favoring release.[7]

    4. The Danger Posed to the Community by Defendant's Release

If as the evidence suggests, defendant was in the area assisting in the offloading of cocaine, it is fair to assume he was a person trusted by a drug trafficking organization involved in a wholesale operation, to put a substantial amount of cocaine in the streets. The congressional definition of the term "danger" encompasses harm to society caused by drug trafficking. See, United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985)(so recognizing). As such, if released, defendant could have access to drug trafficking activities that pose a special risk of danger to the community. See, United States v. Kay, 2008 WL 4449504 at *3 (N.D. Texas Oct. 1, 2008)(denying bail to a defendant found with 100 kilograms of cocaine with an approximate street value of $2 Million in part because evidence indicated that he was a trusted member of the conspiracy, with conspiracy connections available to him).

Defendant was not a resident of Puerto Rico when the incidents leading to his arrest occurred. He was a resident of Pennsylvania, having travelled from Pennsylvania to Puerto Rico, and from the port of entry in Puerto Rico to Patillas. He said he was in Puerto Rico to visit Moca, but as stated above, Moca is some 2½ hours away from Patillas. Transportation carries costs and

---

[7] In the past, defendant had been arrested for domestic violence and illegal use of a driver's license (Pretrial Services Report at pp. 3-4). There is no indication that he violated conditions of release or failed to appear in court (Transcript at p. 31). The nature of the offenses in this case, however, is different, exposing him to life in prison. See, United States v. Pérez-Franco, 839 F.2d 867, 870 (1st Cir. 1988)(denying bail to defendants charged with violating 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i) and 846, in part because although they did not have a prior criminal record, they faced serious consequences as a result of the charges).

requires both coordination and organization. Defendant lacks stable employment in Puerto Rico.[8] There is an increased likelihood that if released, he will return to the drug trafficking connections that led him to Patillas. See, Kay, 2008 WL 4449504 at *3 (noting defendant's unemployment status as a factor increasing likelihood of return to conspiracy connections if released).

### IV.   CONCLUSION

Having carefully considered all the evidence as well as the available range of release conditions, the court concludes that the government has shown, by preponderance of the evidence, that no condition or combination of conditions will reasonably ensure defendant's appearance in court; and by clear and convincing evidence, that no condition or combination of conditions will assure the safety of the community if defendant is released.

The nature and circumstances of the offenses charged, including potential penalty; the weight of the evidence; and danger to the community outbalance other elements in defendant's personal and history and characteristics arguably supporting release. The evidentiary weight of the rebutted presumption (assuming it was rebutted), lends added support for this conclusion. In consequence, the defendant shall remain detained without bail pending trial.[9]

**SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of July, 2017.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge

---

[8] He was employed in Pennsylvania, earning $1,300 per month (Pretrial Services Report at p. 1).

[9] Defendant asserts that four of the seven defendants in the present case have been released on bond (Docket No. 151 at p. 3; Transcript at pp. 13-14). Nevertheless, the status of coconspirators as released on bond and/or in pretrial custody does not bear directly on whether a particular defendant should be released from custody, as such status is not a specific factor under Section 3142(g) which must be considered when making an individualized assessment of eligibility for bail. Detention determinations must be made individually and, in the final analysis, must be based on the evidence which is before the court regarding the particular defendant. See, United States v. Tortora, 922 F.2d 880, 888 (1st Cir. 1990)(so noting). The individualized assessment of detention factors require defendant's detention pending trial.